[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-12110
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cr-20782-KMM-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LIONELL SANDERS,
a.k.a. Pistol,
a.k.a. Brisco,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(July 14, 2015)

Before WILSON, JULIE CARNES, and FAY, Circuit Judges.

PER CURIAM:

Lionell Sanders appeals his total 676-month sentence, imposed after pleading guilty to one count of conspiracy to commit armed robbery, in violation of 18 U.S.C. § 1951(a); two counts of armed robbery, also in violation of § 1951(a); and two counts of using and brandishing a firearm during a crime of violence, in violation of § 924(c)(1)(A)(iii).[1]  On appeal, Sanders argues that the government breached its post-plea sentencing agreement and that the district court incorrectly applied several sentencing enhancements.  In response, the government avers, *inter alia*, that Sanders waived his right to appeal.  After determining that Sanders did not waive his right to appeal, we find that the arguments raised on appeal are without merit.  We thus affirm as to all issues presented.

## I. Appeal Waiver

An appeal waiver will be enforced if it was made knowingly and voluntarily. *United States v. Bushert*, 997 F.2d 1343, 1350–51 (11th Cir. 1993).  To establish that the waiver was made knowingly and voluntarily, the government must show that either (1) the district court specifically questioned the defendant about the

---

[1] According to the presentence investigation report, Sanders was involved in a series of armed robberies.  In the commission of these robberies, some of the victims were pistol-whipped, with at least one victim non-fatally shot.

waiver during the plea colloquy, or (2) the record makes clear that the defendant otherwise understood the full significance of the waiver. *Id*. at 1351.

It is not manifestly clear from the record that Sanders understood the appeal waiver's full significance at the time he entered his guilty plea. The district court's discussion of the appeal waiver did not clearly convey to Sanders that he was giving up his right to appeal under most circumstances; indeed, the district court failed to specifically question Sanders about the appeal waiver during the plea colloquy. *See Bushert*, 997 F.2d at 1352–53; *see also* Fed. R. Crim. P. 11(b)(1)(N) (requiring the district court to explain the terms of appeal waivers to those pleading guilty). Even though the plain text of the plea agreement stated that Sanders discussed the appeal waiver with his attorney, an examination of the text of the plea agreement, standing alone, is insufficient to find that the defendant made the appeal waiver knowingly and voluntarily. *See Bushert*, 997 F.2d at 1352. Accordingly, we disregard the waiver and proceed to the merits of Sanders's appeal. *See id*. at 1353–54.

## II. Post-plea Sentencing Agreement

Where, as here, the defendant failed to object to the alleged breach before the district court, we review whether the government has breached a plea agreement for plain error. *See Puckett v. United States*, 556 U.S. 129, 135, 129 S. Ct. 1423, 1429 (2009). Sanders characterizes the agreement as the government

agreeing not to present any evidence as to role and as to the use of a minor.  The government characterizes the agreement as the government agreeing with Sanders that the enhancements should not apply, but not limiting the government over presenting evidence or advocating for a sentence.  It is not clear from the record what the verbal post-plea agreement actually entailed, and the solemnization of a plea agreement does not preclude the government from disclosing pertinent information to the sentencing court.  *See United States v. Boatner*, 966 F.2d 1575, 1578 (11th Cir. 1992).  Under plain error review, "the legal error must be clear or obvious, rather than subject to reasonable dispute."  *See Puckett*, 556 U.S. at 134, 129 S. Ct. at 1428.  Thus, Sanders has not shown that the government breached its post-plea agreement under a plain error standard of review.

### III. Sentencing Enhancements

Sanders objected to the upward adjustments to his sentence imposed for his role as a leader or organizer, for using a minor in the commission of the offense, and for physically restraining a person in the commission of the offense.  "We review a sentencing court's findings of fact for clear error and its application of the guidelines de novo."  *United States v. Victor*, 719 F.3d 1288, 1290 (11th Cir. 2013).

### A.  *Leadership Enhancement*

The Guidelines provide for a two-level upward adjustment if the defendant was an "organizer, leader, manager, or supervisor" in the criminal activity. U.S.S.G. § 3B1.1(c).  The Guidelines provide for a four-level upward adjustment if the defendant was an organizer or leader of a criminal activity that involved five or more participants, or was otherwise extensive.  U.S.S.G. § 3B1.1(a).

Here, the district court did not clearly err in applying the § 3B1.1 leadership enhancements.  The factual proffer indicated that Sanders was identified as the lead robber, that Sanders instructed his co-conspirators, and that Sanders gave orders to the victims.  The government's witness testified that at least two of the victims identified Sanders giving orders.  At least one victim stated that Sanders gave directions to a co-defendant during the robbery.  *See United States v. Lozano*, 490 F.3d 1317, 1323 (11th Cir. 2007) ("The assertion of control or influence over only one individual is enough to support a § 3B1.1(c) enhancement." (internal quotation marks omitted)).  Also, one of the co-conspirators identified Sanders as the leader of the robberies.  Given this evidence, the district court did not err in concluding that Sanders exercised "some degree of control, influence, or leadership" during the robberies, sufficient to support a § 3B1.1 enhancement.  *See United States v. Martinez*, 584 F.3d 1022, 1026 (11th Cir. 2009) (internal quotation marks omitted).

**B.  Use of a Minor Enhancement**

5

The Guidelines provide for a two-level upward adjustment if the defendant used or attempted to use a person less than eighteen years of age to commit the offense. U.S.S.G. § 3B1.4. "Used or attempted to use includes directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting." U.S.S.G. § 3B1.4, cmt. n.1. Further, in the case of a jointly undertaken criminal activity, the defendant's relevant conduct includes "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). The use of a minor enhancement applies in this case. The government presented evidence that Sanders used a minor as a lure; this goes beyond mere presence and participation. *See United States v. Taber*, 497 F.3d 1177, 1181 (11th Cir. 2007) (per curiam); *see also United States v. McClain*, 252 F.3d 1279, 1286 (11th Cir. 2001) (noting that § 3B1.4 is intended "to protect minors as a class from being solicited, procured, recruited, counseled, encouraged, trained, directed, commanded, intimidated, or otherwise used to commit crime" (internal quotation marks omitted)).

## C.  *Physical Restraint Enhancement*

Section 2B3.1(b)(4)(B) provides for a two-level enhancement if any person was physically restrained to facilitate commission of the offense or to facilitate escape. U.S.S.G. § 2B3.1(b)(4)(B). The enhancement applies when the

6

defendant's conduct ensured the victims' compliance and effectively prevented them from leaving a location. *Victor*, 719 F.3d at 1290.

During several of the robberies, Sanders told the victims to freeze, forced the victims out of their cars, and forced the victims onto the ground at gunpoint. We have previously upheld the application of the physical restraint enhancement when the victim was forced to remain in a location at gunpoint. *See id.* at 1290–91 (upholding physical restraint enhancement when the defendant threatened bank lobby employee with what the employee believed to be a gun, to prevent her from escaping); *United States v. Jones*, 32 F.3d 1512, 1519 (11th Cir. 1994) (per curiam) (upholding physical restraint enhancement when the defendants forced bank employees and customers into the safe room and ordered them to lie down on the floor). Accordingly, the district court did not err in applying the physical restraint enhancement.

## IV. Conclusion

After considering the parties' briefs and reviewing the record before us, we affirm the district court.

**AFFIRMED.**