[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-12466
Non-Argument Calendar
_____

D.C. Docket No. 9:16-cr-80090-DTKH-2


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CLIFFORD ERIC LUNDGREN,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 11, 2018)

Before WILLIAM PRYOR, MARTIN, and ANDERSON, Circuit Judges.

PER CURIAM:

Clifford Lundgren pled guilty to conspiring to traffic in counterfeit goods, in violation of 18 U.S.C. § 2320(a)(1), and criminal copyright infringement, in violation of 17 U.S.C. § 506(a)(1)(A) and 18 U.S.C. § 2319(a) and (b)(1). Lundgren's plea related to his role in a scheme in which he created and intended to sell about 28,000 copies of Dell reinstallation discs for Microsoft Windows, without permission from Microsoft. Lundgren appeals his sentence of 15-months imprisonment. He argues the district court erred in calculating the value of the infringed item, which drove his guideline range, and that his sentence is substantively unreasonable as a result. After careful review, we affirm.

## I.

Robert Wolff, a codefendant, contacted Lundgren to inquire about creating unauthorized copies of Dell reinstallation CDs for Microsoft Windows that could be sold to refurbishers of Dell computers. Wolff provided Lundgren an authorized retail copy of a disc he had purchased, and Lundgren arranged for the disc to be copied by a Chinese manufacturer. The copied discs had labels on them that falsely said the discs contained authorized copies of copyrighted software.

In 2012, U.S. Customs and Border Protection officers detained several shipments of discs that Lundgren had shipped to Wolff from China. In 2016, Lundgren and Wolff were charged by indictment with conspiracy to traffic in counterfeit goods, trafficking in counterfeit goods, criminal copyright

infringement, trafficking in illicit labels, wire fraud, and mail fraud. Lundgren entered into a plea agreement in which he pled guilty to conspiracy to traffic in counterfeit goods and criminal copyright infringement. The government dropped the remaining charges. Lundgren admitted he shipped approximately 28,000 counterfeit discs to Wolff, and that on one occasion, Wolff paid Lundgren $3,400 in exchange for discs.

A probation officer prepared a Presentence Investigation Report ("PSR"), which calculated Lundgren's guideline sentencing range to be 37 to 46 months imprisonment. This range was largely based on a calculation that valued the infringed goods at $700,000. To arrive at this amount, the PSR relied on evidence put forward by the government that "Microsoft had a certified computer refurbisher program that made genuine authorized reinstallation discs available to computer refurbishers for about $25," and multiplying that amount by the 28,000 discs produced.

Lundgren objected to the PSR infringement amount. He argued that the Sentencing Guidelines required the court to use an infringement amount of about $4 per disk, which was the price for which Lundgren and Wolff were selling their copies. Lundgren also argued that the $25 retail price was inappropriate because the copied disks were not exact reproductions of the original.

At sentencing, the court heard expert testimony on the appropriate value to use for the infringement amount. The government presented evidence that Original Equipment Manufacturers ("OEM") like Dell enter into licensing agreements with Microsoft such that each Dell device has a Microsoft operating system license that travels with the device in perpetuity. As part of that agreement, OEMs provide reinstallation discs so that users can reinstall the software if for some reason it is deleted from their devices.

Refurbishers often purchase computers that have been wiped clean from businesses. If those computers came from an OEM like Dell, they would have been set up with a perpetual license to a Microsoft operating system. However, because the devices are typically wiped clean and usually do not come with their original reinstallation discs, the device would not have a copy of the Microsoft operating system software. Microsoft offers discounted software to licensed refurbishers who find themselves in this situation. The government introduced evidence that while a person could have purchased Windows XP Pro from a retail store for $299, small registered refurbishers could have purchased the software for $25. The government's expert also testified that even if a user did not have a legitimate license, a reinstallation disc could allow a user to access Microsoft operating system software with near-full functionality.

4

Lundgren presented testimony that disputed the value of the reinstallation discs. Lundgren's expert testified that reinstallation discs were fundamentally different than the discs sold by Microsoft to small registered refurbishers because the discs sold by Microsoft came with a license, and a reinstallation disc required the user to obtain a license from somewhere else. The defense expert testified that the value of the discs without a license was "[z]ero or near zero."

The sentencing judge determined that the appropriate infringement value was the value of the infringed discs to small registered refurbishers: $25. The court found credible the government expert's testimony that he was able to use the infringing discs to install functioning Microsoft software. In contrast, the court found the defense expert's testimony that the discs were worth nothing without the license to be not credible. In particular, the court noted that it did not find it reasonable to believe that Lundgren and his codefendant had spent at least around $80,000 to create discs that had no value. Using the $25 infringement amount, Lundgren's guideline range was 37 to 46 months imprisonment. The court sentenced Lundgren to 15-months imprisonment. This appeal followed.

## II.

"We review the district court's factual findings for clear error and the application of the Sentencing Guidelines de novo." United States v. Lozano, 490 F.3d 1317, 1321 (11th Cir. 2007). In particular, we review for clear error a district

5

court's calculation of the relevant infringement amount. Id. at 1322. We afford substantial deference to a district court's credibility determinations at sentencing. United States v. Pham, 463 F.3d 1239, 1244 (11th Cir. 2006) (per curiam). "We review the reasonableness of a sentence for an abuse of discretion." United States v. Victor, 719 F.3d 1288, 1291 (11th Cir. 2013).

### III.

A defendant convicted of conspiracy to traffic in counterfeit goods is sentenced based in part on his "infringement amount." USSG § 2B5.3(b)(1). If the case involves an infringing item that "is, or appears to a reasonably informed purchaser to be, identical or substantially equivalent to an infringed item," courts are instructed to calculate the infringement amount by taking "the retail value of the infringed item, multiplied by the number of infringing items." Id. § 2B5.3 cmt. n.2(A)(i) (emphasis added). As relevant here, if the infringing item is not substantially equivalent to the infringed item, the infringement amount is instead based on "the retail value of the infringing item." Id. § 2B5.3 cmt. n.2(B) (emphasis added).

Lundgren argues that the district court erred in calculating the infringement value because the amount offered by the government was not for a substantially identical item. Specifically, Lundgren says the $25 amount offered by the

6

government was for Microsoft software with a license, while the discs he caused to be created contained Microsoft software without a license.

The district court did not err in concluding the "infringement amount" in this case was $700,000. First, the district court did not clearly err in concluding that the discs Lundgren created were, or appeared to a reasonably informed purchaser to be, substantially equivalent to legitimate discs containing Microsoft OS software. See Lozano, 490 F.3d at 1322. That conclusion was supported by the sentencing hearing testimony, in which the government's expert witness testified that the software on the disks created by Lundgren performed in a manner largely indistinguishable from the genuine versions created by Microsoft. While experts on both sides may have identified differences in functionality in the discs, the district court did not clearly err in finding them substantially equivalent.

Second, the district court reasonably concluded that the proper value of the infringed item was $25 per disc. The government's expert testified that the lowest amount Microsoft charges buyers in the relevant market—the small registered computer refurbisher market—was $25 per disc. Although the defense expert testified that discs containing the relevant Microsoft OS software had little or no value when unaccompanied by a product key or license, the district court explicitly stated that it did not find that testimony to be credible. We afford deference to a district court's credibility determinations, and here, no evidence suggests that the

7

district court erred in concluding that the defense expert's valuation was not worthy of credence.  Pham, 463 F.3d at 1244.  To the contrary, as the district court noted, it is difficult to square the defense's valuation with the fact that Lundgren and his codefendant spent about $80,000 to fund a copyright-infringement scheme that they expected to profit from.

In sum, the district court did not clearly err in valuing the infringed item at $25 per unit and concluding that the total infringement amount was $700,000.  As a result, the district court correctly determined that Lundgren's base offense was subject to a 14-level increase under § 2B5.3(b)(1) and § 2B1.1(b)(1)(H), and correctly calculated Lundgren's guideline range.  Because Lundgren's only argument that his sentence was unreasonable is rooted in this purported miscalculation, we also conclude that his below-guideline sentence was procedurally and substantively reasonable.  See Gall v. United States, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007).  We therefore affirm his total sentence.

**AFFIRMED.**

8